UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KURT BENSHOOF,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID S. KEENAN,<br><br>　　　　　Defendant. | CASE NO. 2:24-cv-382<br><br>ORDER |

# 1.  INTRODUCTION

This matter comes before the Court on Plaintiff Kurt Benshoof's motions to stay, Dkt. Nos. 25, 28, 30, and Defendant King County Superior Court Judge David Keenan's motion to dismiss, Dkt. No. 39. Because Benshoof fails to establish a need for the requested stay and because judicial immunity blocks his sole cause of action, the Court GRANTS Judge Keenan's motion to dismiss and DISMISSES this case.

# 2.  BACKGROUND

The Court accepts all facts as true from the complaint and construes them in the light most favorable to Benshoof. Fed. R. Civ. P. Rule 12(b)(6).

**ORDER** - 1

Benshoof alleges that Judge Keenan "facilitated" perjury in a parentage action between him and the mother of his child, King County Superior Case No. 21-5-00680-6 SEA. Dkt. No. 20 ¶ 8. Benshoof also alleges that he "took to social media with his questions and concerns" about Judge Keenan's "judicial misconduct." *Id.* ¶¶ 11–13. Beginning in January 2023, Benshoof "posed questions to [Judge Keenan] on [his] Twitter account: @JudgeDaveKeenan[.]" *Id.* ¶ 12. On February 10, 2023, Judge Keenan blocked Benshoof's Twitter account. *Id.* ¶ 13. Benshoof also posted "questions and comments" about Judge Keenan's alleged "judicial misconduct" on Judge Keenan's Facebook page. *Id.* ¶¶ 15–16. And then Judge Keenan blocked Benshoof from viewing his Facebook page. *Id.* Benshoof then began posting "questions and comments" about "judicial misconduct" to Judge Keenan's Twitter account via a new handle: @Altar_Igor. Judge Keenan also blocked this Twitter account in October 2023. *Id.* ¶¶ 17–18.

Benshoof brings one cause of action under 42 U.S.C. § 1983—he claims that Judge Keenan violated his First Amendment rights by blocking him from commenting on, posting to, and even viewing Judge Keenan's social media accounts. *Id.* ¶¶ 19–31. Benshoof seeks an "order declaring that all of [Judge Keenan's] acts or omissions, described [in Benshoof's complaint] violated the First Amendment to the United States Constitution" as well as compensatory and punitive damages. *Id.* at 7–8. He sues Judge Keenan in "his official and individual capacity[.]" *Id.* ¶ 5.

**ORDER** - 2

# 3. DISCUSSION

## 3.1 Legal standard.

The Court will grant a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, a plaintiff must have pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

Pro se pleadings, such as the complaint here, are to be liberally construed on a motion to dismiss. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (while *Twombly-Iqbal* imposed a "higher" plausibility standard, they did not alter courts' obligation to construe pro se complaints "liberally when evaluating them under *Iqbal*").

### 3.2 Benshoof's claim against Judge Keenan "in his official capacity" is barred by sovereign immunity under the Eleventh Amendment.

Benshoof sues Judge Keenan in his official and personal capacities for compensatory and punitive damages, as well as for declaratory relief. The Court starts with Benshoof's "official capacity" claim.

Official-capacity claims against state officials are, at their core, claims against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("We emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) ("[The court] treat[s] [the plaintiff's] suit against state officials in their official capacities as a suit against the state of California"). As a result, Benshoof's claim against Judge Keenan in his official capacity is effectively a claim against King County Superior Court.

King County Superior Court is an arm of the state. *See Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th 2003) (finding that Sacramento County Superior Court and its employees are arms of the state for Eleventh Amendment purposes); *see also Penry v. Thurston Cnty.*, 89 F. App'x 619, 620 (9th Cir. 2004) (holding that Thurston County Superior Court is entitled to

**ORDER** - 4

Eleventh Amendment immunity as an arm of the state); *Robinson v. Pierce Cnty. Superior Ct.*, No. C24-5649-JCC-SKV, 2024 WL 4350401, at *1 (W.D. Wash. Sept. 3, 2024), *report and recommendation adopted*, No. C24-5649-JCC-SKV, 2024 WL 4349600 (W.D. Wash. Sept. 30, 2024) (holding that "Pierce County Superior Court is a state agency as it was established by the Washington State Constitution and is funded by the state government."); *Freeman v. King Cnty. Superior Ct.*, No. C12-1006-JCC, 2012 WL 12541836, at *2 (W.D. Wash. Nov. 20, 2012) (finding that King County Superior Court as an entity (and its employees) are arms of the state of Washington protected by the Eleventh Amendment). But with limited exceptions, the Eleventh Amendment to the United States Constitution bars lawsuits by a citizen against a state. *Simmons*, 318 F.3d at 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."); *see Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("[S]tate officials sued in their official capacities, . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity.").

One exception to this general rule exists: "when sued for *prospective injunctive* relief, a state official in [their] official capacity is considered a 'person' for § 1983 purposes." *Malone v. Washington*, No. 19-5574 RJB-JRC, 2020 WL 5817066, at *3 (W.D. Wash. Sept. 30, 2020) (emphasis in original) (quoting *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)). This is part of the *Ex parte Young* doctrine. *Doe,* 131 F.3d at 839 ("In what has become known as part of *the Ex parte Young* doctrine, *see Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

(1908), a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.").

However, the exception is limited when applied to judges because "Section 1983 expressly immunizes judicial officers from injunctive relief for actions taken in their judicial capacity 'unless a declaratory decree was violated or declaratory relief was unavailable.'" *Kamath v. Barmann*, No. 1:23-CV-00461 JLT CDB, 2024 WL 2132607, at *7 (E.D. Cal. May 13, 2024) (quoting 42 U.S.C. § 1983); *see also Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024) ("§ 1983's plain text provides 'judicial immunity from suit for injunctive relief for acts taken in a judicial capacity.'") (quoting *Wolfe v. Strankman*, 392 F.3d 358, 366 (9th Cir. 2004)).

This exception does not apply here. Nothing in the complaint indicates that a "declaratory decree was violated or that declaratory relief was unavailable" to Benshoof. On this latter point, the alleged errors and resulting harm underlying Benshoof's Section 1983 claim arise from Judge Keenan's handling of Benshoof's family law case. Dkt. No. 20 ¶ 8 ("In October 2022, Defendant allowed, enabled, and facilitated family law attorney Nathan L. Cliber's subornation of Jessica R. Owen's perjury in King County Superior Court case no. 21-5-00680-6 SEA."). In the usual case, "declaratory relief against a judge for actions taken within his or her judicial capacity is ordinary available by appealing the judge's order." *Agbannaoag v. Honorable Judges of Cir. Ct. of First Cir. of Hawaii*, No. CIV. 13-00205 BMK, 2013 WL 5325053, at *3 (D. Haw. Sept. 20, 2013) (quoting *La Scalia v. Driscoll*, No. 10-CV-5007, 2012 WL 1041456, at *7 (E.D.N.Y. Mar. 26, 2012)). While it is unclear

**ORDER** - 6

from the complaint whether Benshoof appealed Judge Keenan's rulings, the facts alleged suggest that such relief was available to him in state court.

In any event, the declaratory relief that Benshoof seeks here—"[a]n order declaring that all of Defendants' acts or omissions . . . violated the First Amendment to the United States Constitution"— is not *prospective* in nature. Dkt. No. 20 at 7. Benshoof's use of the past-tense makes clear that he objects to Judge Keenan's prior conduct. *See Rothenberg v. Stone*, 234 F. Supp. 2d 217, 222 (E.D.N.Y. 2002) ("The Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law.") (citing *Green v. Mansour*, 474 U.S. 64, 65–66, (1985)).

Accordingly, the Court DISMISSES with prejudice Benshoof's claim against Judge Keenan in his official capacity as barred by the Eleventh Amendment.

### 3.3   Benshoof cannot maintain a claim against Judge Keenan "in his personal capacity" because he is judicially immune.

Because the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities[,]" the Court turns to Benshoof's Section 1983 claim against Judge Keenan in his personal capacity. *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (emphasis in original).

Individual or personal-capacity suits seek to impose personal liability upon a government official for wrongful actions made under color of law "and that were taken in [the] course of [their] official duties." *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015). Benshoof alleges that Judge Keenan acted under "color of law" when he blocked Benshoof from his social media accounts. Dkt. No. 20 ¶ 21. In social

media cases, determining state action can be a close call. *Lindke v. Freed*, 601 U.S. 187, 197 (2024) (establishing a two-part test for analyzing whether a public officials social media activity constitutes "state action" under § 1983; cautioning that when categorizing conduct, "[a] close look is definitely necessary in the context of a public official using social media."). Judge Keenan appears to concede this point, however, as he does not argue whether his alleged conduct constitutes state action. *See generally* Dkt. No. 39. Given that Judge Keenan doesn't put up a fight on this issue, the Court assumes without deciding for this Order that his social-media activities constitute state action under § 1983.

"It is well settled that judges are generally immune from suit for money damages." *Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001)). "A judge loses absolute immunity only when [the judge] acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature." *Schnucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (citations omitted). To determine whether an act is judicial in nature, courts in the Ninth Circuit consider whether "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in [their] official capacity." *Lund*, 5 F. 4th at 971 (cleaned up).

As for the first factor, Judge Keenan argues he blocked Benshoof to prevent ex parte communication, which is a normal judicial function. Dkt. No. 39 at 8 (citing Washington State Code of Judicial Conduct Rule 2.9A ("A judge shall not initiate,

**ORDER** - 8

permit[,] or consider ex parte communications")). The Court agrees that deciding how to handle ex parte communications is a typical judicial act. *See Cossio v. Tourtelot*, 725 F. App'x 406, 410 (7th Cir. 2018) ("[A judge] report[ing] an improper ex parte contact . . . [is] a judicial function).

As to the remaining three factors, Judge Keenan argues Benshoof's "comments centered around King County Superior Court No. 21-5-00680-6 SEA" and "arose directly from Judge Keenan's acts in his official capacity presiding over that case." Dkt. No. 39 at 8.

Although Benshoof's allegations are conclusory and vague, the Court finds they describe ex parte communications because his comments relate to his pending case before Judge Keenan, King County Superior Court No. 21-5-00680-6 SEA. Dkt. No. 20 at 2 (Benshoof alleging that Judge Keenan "allowed, enabled, and facilitated" perjury in King County Superior Court No. 21-5-00680-6 and "[w]hen [he] raised valid concerns in his posts to [Judge Keenan's] Twitter and Facebook accounts, [Judge Keenan] blocked him."); *id.* ¶¶ 13, 16, 18 (Benshoof describes his posts as "questions and comments" "critical of [Judge Keenan's] judicial misconduct"). While Benshoof does not attach or recite his posts verbatim in the complaint, the descriptions he provides make clear that he was posting about the ongoing case.

Context also matters—Benshoof's decision to post on Judge Keenan's social media pages, verses posting on his own account or another general audience forum, suggests he wanted to communicate with Judge Keenan directly. Even though the conduct at issue occurred online, instead of within Judge Keenan's chambers, Benshoof's actions are akin to ex parte communications between a litigant and a

presiding judge about an ongoing case. Thus, even under these unusual circumstances, the Court finds Judge Keenan's conduct judicial in nature. As such, Judge Keenan, in his personal capacity, is entitled to judicial immunity from Benshoof's claim for money damages.

With respect to Benshoof's claim for declaratory relief against Judge Keenan in his personal capacity, it fails along the same lines as his claim for declaratory relief against Judge Keenan in his official capacity. *See Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) (holding that judicial immunity bars all actions except those for *prospective* declaratory relief); *Gilliam v. Watanabe*, No. CV 20-00201 JMS-RT, 2020 WL 5223778, at *4 (D. Haw. Sept. 1, 2020), *aff'd*, 859 F. App'x 765 (9th Cir. 2021) (dismissing a plaintiff's action against a judge where she failed to seek prospective declaratory relief).

Accordingly, the Court DISMISSES with prejudice Benshoof's claim against Judge Keenan in his personal capacity.

**3.4    The Court denies leave to amend.**

"A pro se litigant must be given leave to amend [their] complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) ("[The Ninth Circuit has] held that a district court's denial of leave to proceed in forma pauperis is an abuse of discretion unless the district court first provides a plaintiff leave to amend the complaint or finds that amendment would be futile."); *Lucas v.*

*Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no amendment can cure the defect, however, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

Here, it would be futile to allow Benshooof an opportunity to amend given that the Eleventh Amendment and absolute judicial immunity block his underlying claim.

**3.5   Staying the proceedings is unwarranted.**

Benshoof moves to stay the proceedings until he is released from King County Jail. Dkt. Nos. 25, 28, 30. By way of background, after filing this action and receiving IFP status, Benshoof was arrested for unrelated charges and booked into custody at the King County Jail on July 3, 2024. Benshoof notified the Court that he "[was] scheduled to be released . . . on . . . November 27, 2024." Dkt. No. 41 at 1.

A district court has discretion to stay proceedings in its own court. *Sullivan v. Aurich*, No. C21-5433-TL-SKV, 2022 WL 2111113, at *1 (W.D. Wash. May 9, 2022) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In exercising this discretion, the court weighs competing interests, including "(1) the damage that might result from granting a stay; (2) the hardship a party may suffer in being required to move forward; and (3) whether a stay would promote the orderly course of justice by the simplification or complication of the issues." *Germack v. Dentists Ins. Co.*, No. C20-0661-JCC, 2020 WL 6505020, at *1 (W.D. Wash. July 7, 2020) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

**ORDER** - 11

Benshoof's motion is moot, however, because he has been released from custody. *See* Dkt. No. 41. But even if the Court evaluates Benshoof's request on the merits, it still fails. Benshoof argues that, in custody, he cannot effectively argue his case. Over the course of three motions requesting the same relief, Benshoof claims he was denied access to "the internet," "his own legal documents, files, records, [and] evidence[,]" and his "computers and phone." Dkt. Nos. 25, 28.

The fact that a party is incarcerated does not always support staying a case. *See Fader v. Berrada*, No. C21-5264 TSZ-TLF, 2021 WL 5967949, at *1 (W.D. Wash. Nov. 24, 2021), *report and recommendation adopted in part,* No. C21-5264 TSZ, 2021 WL 5937687 (W.D. Wash. Dec. 16, 2021) ("[t]he interests of justice and equity do not support staying this action" while the plaintiff was incarcerated because "[t]here is no indication that plaintiff's access to the Court is currently restricted or that plaintiff is unable to litigate this action *pro se.*"). Here, Benshoof has filed multiple motions since his arrest, showing that he has access to the Court. Dkt. Nos. 25, 28, 30, 33, 37. He also filed a notice registering to electronically file and receive electronic service. Dkt. No. 31. Therefore, Benshoof's actions contradict his claims, and the Court finds no reason supported in the record to stay its decision. The Court DENIES Benshoof's motions to stay, Dkt. Nos. 25, 28, 30.

Benshoof also moves for discovery, although most of his arguments relate to a stay until he is no longer incarcerated. *See generally* Dkt. No. 33. Benshoof is not entitled to discovery given that the Court is dismissing his case under Rule 12(b)(6). Benshoof's motion for discovery, Dkt. No. 33, is DENIED.

**3.6   The motions to strike are moot.**

Judge Keenan twice moved to strike motions to stay by Benshoof "[t]o the extent that [they] ha[ve] been prepared and filed by a person not authorized to practice law"—specifically, Urve Maggitti. Dkt. Nos. 32 at 2 (asking the Court to strike Dkt. No. 30); Dkt. No. 33 (seeking to strike Dkt. No. 33).

Maggitti's role is unclear, as Benshoof signed both motions. Dkt Nos. 30 at 7; 33 at 11. It appears Maggitti seeks to act as a "Next Friend," but Maggitti does not demonstrate that they are qualified for next-friend status because they do not show "that they possess some significant relationship with, and is truly dedicated to the best interests of [Benshoof]." *Benshoof v. Ferguson*, No. 2:24-CV-00808-JHC, 2024 WL 3744257, at *1 (W.D. Wash. Aug. 9, 2024) (citing *Washington v. U.S. Congress*, C15-443-JCC, 2015 WL 2085607, at *2 (W.D. Wash. May 15, 2015)). However, because the Court is dismissing Benshoof's case on the merits, it need not delve into the issue further as it does not affect the outcome of this case.

Benshoof moves to strike the declaration of Ann M. Summers (Judge Keenan's then-attorney), arguing that his criminal cases have no essential or important relationship to his case against Judge Keenan. Dkt. No. 37. The Court disagrees—Benshoof's criminal matters are relevant given that he moved several times to stay this case until he was released from custody. Therefore, the Court DENIES Benshoof's motion to strike.

## 4.   CONCLUSION

In summary, the Court GRANTS Judge Keenan's motion to dismiss, Dkt. No. 39, and DISMISSES Benshoof's case with prejudice. The Court DENIES Benshoof's

motions to stay, Dkt. No. 25, 28, 30, motion for discovery, Dkt. No. 33, and motion to strike, Dkt. No. 37. The Clerk is directed to close this case.

Dated this 9th day of January, 2025.

*[signature]*

Jamal N. Whitehead
United States District Judge

ORDER - 14